Turner v. Peck.

their powers in this respect. The only question, therefore, is whether the legislature had the right to authorize the erection of a free bridge, across the Oswego river, so near to the bridge which the complainants had erected, under their charter, as to diminish their tolls and materially impair the profits of the company. I had occasion, incidentally, to consider the power of the legislature in this respect in the case of *The Mohawk Bridge Company* v. *The Utica and Schenectady Rail-Road Co.* (6 *Paige's Rep.* 554,) and I then came to the conclusion that the grant to a corporation to erect a toll bridge across a river, without any restriction of the power of the legislature to grant a similar privilege to others, would not deprive a future legislature of the power to authorize the erection of another bridge which would divert a portion of the travel from the bridge which had been previously erected. Since that decision we have been furnished with the reported case of *The Charles River Bridge Co.* v. *The Proprietors of the Warren Bridge,* (11 *Peters' Rep.* 420,) decided by the supreme court of the United States a few months before, but not then reported. That case cannot be distinguished in principle from the present; and as the question was fully considered there, in the very able opinion of Chief Justice Taney, who delivered the judgment of the court, it would be useless to go over the same ground.

The decision of the vice chancellor was therefore right in this case; and the decree appealed from must be affirmed with costs.

### TURNER *vs.* PECK.

In April, 1829, W., the owner of a state certificate, which entitled him to a patent for a village lot in East Oswego, upon the payment of $30, which remained due to the state for the purchase money, sold and conveyed the north half of the lot to A. C., with warranty; and the conveyance was recorded on the 15th of August, in the same year; and the grantee in that conveyance conveyed that half of the lot to P., who subsequently conveyed it to the complainant; and the day before the recording of the conveyance to A. C., the holder, of the state certificate assigned it to G. and C., together with a contract which he had made with D. for

Turner *v.* Peck.

the sale of the southwest quarter of the lot. And they gave back to him a covenant, that whenever they should obtain the patent from the state, they would convey the southwest quarter of the lot to D., with warranty, and would convey the residue of the lot to W., by a quit-claim deed; and subsequent to the recording of the conveyance to A. C., for the north half of the lot, W., by an endorsement on the covenant of G. and C., sold to the defendant all his right, title, and claim to the land mentioned in that covenant, for a valuable consideration; G. afterwards assigned his interest in the state certificate to C., who obtained a patent for the whole lot, in his own name; and subsequently conveyed to the defendant all the lot, except the southwest quarter which was contracted to be. sold to D.; under which last mentioned conveyance the defendant subsequently claimed title to the north half of the lot, as well as to the southeast quarter thereof to which he was entitled as the assignee of the covenant of G. and C. Upon a bill filed by the complainant, to compel the defendant to execute a quit-claim deed to him of the north half of the lot; *Held*, that by the conveyance by W. of the north half of the lot, to A. C., the $30, due to the state for the unpaid purchase money, became primarily chargeable upon the south half of the lot; and that the contract with D. entitled him to the southwest quarter, subject to the payment of the purchase money due upon that contract; that as between D. and W., as well as between the latter and A. C., the $30 due to the state was a charge upon the purchase money due from D. on his contract with W.

*Held further*, that by the assignment of the state certificate from W. to G. and C., they took no beneficial interest in the north half of the lot, nor in the southeast quarter thereof. But that the legal effect of the assignment of the state certificate, and of the covenant from G. and C. to W., to quit-claim the other three quarters of the lot to him, was that, upon obtaining the patent from the state, they were bound to convey three fourths of the lot to him absolutely and unconditionally. And as to the southwest quarter, they were to convey it to D. upon his complying with the terms of his contract; and to receive and retain the purchase money due upon that contract to reimburse them for the $30 which they were to pay to the state. And that if D. did not comply with his contract they would be entitled to that quarter of the lot for their own use and benefit.

*Held also*, that the only equitable right which W. had in the lot, under the covenant of G. and C., at the time of this assignment to the complainant, was the right to an absolute conveyance, for his own benefit, of the southeast quarter of the lot, as soon as a patent should be obtained from the state. And that the defendant took the assignment of W.'s right to a quit-claim deed, under that covenant, subject to the previous right of A. C. to the north half of the lot under the previous conveyance by W. with warranty.

*Held further*, that C., the patentee of the state, took the legal title to the north half of the lot, by virtue of the patent, in trust for the complainant's use and benefit; such being the effect of the covenant of G. and C. in connection with the conveyance with warranty to A. C. under and through which the complainant had obtained his equitable right to that half of the lot. And that the conveyance of that part of the lot to the defendant being without consideration, the latter was not entitled to hold it as against the complainant's equitable right.

This was an appeal, by the defendant, from a decree of the vice chancellor of the fifth circuit. In April, 1829, J. Whaley, the father-in-law of the defendant, owned a state certificate which entitled him to a patent for lot No. 213, in East Oswego village, upon the payment of $30, which remained due to the state for the balance of the purchase money. And on the 27th of that month, he sold and conveyed to Adeline Clark the north half of the lot, by deed with warranty; which conveyance was duly acknowledged, and on the 15th of August, in the same year, was recorded in the office of the clerk of the county in which the premises were situated. Miss Clark was assessed for the north half of the lot for the year 1829, and exercised acts of ownership over the same; but the witnesses did not agree as to the fact whether her half of the lot was actually enclosed. In the spring of 1830 she married J. D. Shuart; and she and her husband conveyed the premises to L. Palmer, who conveyed to the complainant. On the 14th of August, 1829, Whaley assigned the state certificate to G. and C. Woodruff, together with a contract which he had made with O. Davis for the sale of the southwest quarter of the lot. And they, at the same time, gave back to him a covenant, under their hands and seals, by which they agreed, whenever they should obtain the patent from the state, to convey the southwest quarter of the lot to Davis, with warranty, upon his complying with the conditions of his contract; and that they would convey the residue of the lot by a quit-claim deed to Whaley. In June, 1830, Whaley, by an endorsement upon the contract, or covenant, of G. and C. Woodruff, under his hand and seal, but neither witnessed nor acknowledged, sold to his son-in-law, the defendant, all his right and title or claim to the land for which he was to have a quit-claim deed by virtue of that contract, in consideration of thirty dollars. G. Woodruff afterwards assigned his interest in the state certificate to C. Woodruff. The latter obtained a patent for the whole lot, in his own name, a few days previous to the fifth of September, 1834; and on that day he conveyed to the defendant all the lot, except the southwest quarter which was contracted to be sold to Davis. No considera-

tion was paid for this conveyance, by the defendant; but Woodruff conveyed to him because he claimed the conveyance as assignee of the covenant given to Whaley in August, 1829. Under this conveyance the defendant subsequently claimed title to the north half of the lot, as well as to the southeast quarter thereof, to which he was entitled as the assignee of the covenant of G. and C. Woodruff to Whaley. And he having refused to execute a quit-claim deed of the north half of the lot to the complainant, the latter filed his bill in this cause to obtain such conveyance. The cause was heard upon pleadings and proofs, and the vice chancellor made a decree according to the prayer of the bill. From this decree the defendant appealed to the chancellor.

The following opinion was delivered by the vice chancellor:

GRIDLEY, V. C. Whaley, while holding the certificate of the whole lot, (the north half of which is in question in this suit,) conveyed, for good considerations, the said north half, by warranty deed to Adeline Clark; and she and her father went into possession of, and occupied, the premises in question for a time; after which she was married, and finally removed with her husband. From this source the complainant, by several mesne conveyances, derives his title to the lot. After the giving of this deed to Miss Clark, and before it was recorded, and while Miss Clark and her father were in possession of the premises, Whaley assigned the certificate to the Woodruffs, under a condition, if they should get a patent, to convey to him, Whaley, all the lot, except the southwest quarter thereof which was contracted to be sold to one Davis, by quit-claim deed. On the 8th June, 1830, W. assigned his right and title to this land, and to this contract of the Woodruffs, to the defendant. In 1834 C. Woodruff obtains a patent and deeds to Peck as the assignee of Whaley. My opinion is, that Peck must be deemed to hold this land as trustee for the complainant, the real owner. Whaley has no right nor title to these premises, and conveyed none to the Woodruffs, for two reasons; 1. It was only an equitable interest, or chose in action, and the purchasers took it subject to all the

equities in the hands of the original owner, Whaley.  2.  The possession of Miss Clark, independent of the recorded deed, was legal notice of her interest.   For the first of these reasons, and I think, from a fair view of the evidence on the subject of possession, for the second also, Peck took no interest in the premises by virtue of the assignment of Whaley.   And for a third reason also; which is, that Whaley did not assume, or profess to sell, or assign any thing but his own right and title; or this equitable interest, which clearly carried nothing more than his actual interest after Miss Clark's north half was deducted.   He did not own a particle of interest in the north half; and the assignment therefore conveyed nothing.   Suppose Whaley's interest, whatever that was, did, in form, pass to Peck.   For the reasons aforesaid, Peck took it subject to all the equities connected with it while in Whaley's hands.   In other words, it being a chose in action, Peck did not take it discharged of its equities as he would have taken a promissory note for value; but he took it liable to all such equities, as he would have taken a bond, or any other chose in action.   Whaley, before this assignment to Peck, held an interest in the land which, when he should receive it from Woodruff in the shape of the legal estate, would belong, at once, to Miss Clark, or her grantees, to prevent circuity of actions. And he would have been estopped from denying Miss Clark's title.  (9 *Cowen*, 18.   14 *John.* 194.   *Co. Lit.* §§ 446, 265, *a. b.*) Peck got Whaley's interest, subject to this equity; and when that interest issued into the legal estate by the patent and deed from Woodruff, it was still the same interest in the new shape of legal title, and Peck is liable to have Miss Clark's rights enforced against him, just as Whaley would have been.   I have said that Whaley did not even assume to assign any thing but his right and title; which would exclude Miss Clark's lot.   I am inclined to think, also, that the defendant could never have regarded Whaley as selling more, or himself as buying more. Such a supposition would impute a high offence to Whaley, even if the object was to defraud Miss Clark.   The possession and occupancy of Miss Clark was notorious, and her deed on record.   Would Whaley assume that Peck, his friend and

Turner v. Peck.

neighbor, was ignorant of this; and thus seek to commit a double crime, by defrauding him? Peck had every opportunity to know how the fact was; since every person, and the whole neighborhood, was aware of it. The consideration was wholly inadequate; and it does not appear, with sufficient clearness, that even the small notes in addition to the $30, were taken up by Peck; or if so, as any part of the consideration of this assignment. The answer on this point is not as positive. There must be an order that Peck cause the title to be conveyed to the complainant free from incumbrances, as he received it from Woodruff; and he must pay the costs of this suit.

*C. Stevens*, for appellant. The testimony is not sufficient to show a possession at any time by Miss Clark; and if otherwise, there is no evidence to show such possession as is, in equity, constructive notice, at the time when Peck purchased from Whaley; or at any period subsequent thereto, and prior to the acquisition by the defendant of the legal title. The record of Whaley's deed to Adeline Clark is not constructive notice to the defendant; because the interest thereby acquired, being a right under an executory contract for the sale of lands, is one not required to be recorded, and the record of which has no effect. Because such record, if in any respect proper, could only bind subsequent purchasers of the same equitable interest from the same grantor; and the defendant claims, not as a subsequent purchaser from Whaley, but by a paramount title. Because the deed was not recorded until after Whaley had parted with his whole equitable interest. The defendant had not actual notice. 1. He denies it in his answer. 2. It is disproved by the complainant's own witness. 3. Notice, here, amounting to fraud, the proof should be strong. 4. Not a single witness swears to it. 5. The presumptions relied on are worthless, or at best very slight, and Peck being a purchaser, this is not a case for presumptions. 6. It is very probable that there was no equity to give notice of. The defendant is a purchaser for a valuable consideration; if for a precedent debt, that would be sufficient; but the fact is otherwise, and the answer on this point being re-

sponsive to the bill and uncontradicted, is conclusive. The defendant being a purchaser for a valuable consideration, and without notice, either actual or constructive, he will not be disturbed in equity—1. Because he has a higher equity than the complainant. 2. Because he has the legal title. Though Peck had notice, yet if the Woodruffs had not, he is protected by the conveyance of the latter.

*W. F. Allen*, for respondent. I. The defendant acquired no rights under the deed from C. Woodruff to which he was not entitled under the assignment from J. Whaley; and we must resort to that assignment to ascertain his rights. Woodruff had nothing to convey, except the interest of Whaley. He stood as the trustee of Whaley as to all the lot, except the southwest quarter contracted to Davis. Woodruff's impression, at the time of his examination as a witness, was, that on the contingency that Davis did not pay up for his quarter, the whole lot was to belong to him. This he only states as an understanding, and is contradicted, 1st, by the language of the instrument itself, and which must govern; and 2d, by the admissions of Woodruff himself, as proved by Joseph D. Shuart, and which, if defendant claims under him, are binding upon him. For it is well settled, that a representative is bound by the admission, as well as by other acts, of the person whom he represents; and this includes all derivative interests; (*Gresl. Eq. Ev.* 355;) and that the declarations of a person under whom one of the parties claim title by a conveyance made subsequent to the declaration, are evidence for the adverse party. (*Varick* v. *Briggs*, 6 *Paige's R.* 323; *S. C.* 22 *Wend.* 543. *Park* v. *Peck*, 1 *Paige's R.* 477. *Cowen & Hill's Notes to Phil. Ev.* 663 *to* 669, *and authorities cited, note* 481.) There was no consideration for the deed, aside from the assignment from Whaley to the defendant, and the consideration by which it was supported. C. Woodruff conveyed to defendant in fulfilment of the contract of G. & C. Woodruff, of which defendant claimed to be the assignee. The defendant cannot, therefore, claim to be a purchaser in good

faith and for a valuable consideration, from C. Woodruff; but he must resort to the assignment from Whaley.

II. The defendant, by the assignment from Whaley, acquired no title to the north half of the lot, nor any rights, interests or equities therein. Whaley had no title to that part of the lot, or any rights, interests or equities therein, which he could convey. Although Whaley, at the time of the conveyance to Miss Clark, had not a perfect title to the lot, still he had a legal interest therein, by virtue of the state's certificate, and had, in fact, a title thereto, subject to the lien of the state for the unpaid purchase money, $30; and by the conveyance, Miss Clark acquired a valid equitable title to that part of the lot in question, subject to that lien. In *The Atty. General* v. *Purmort*, (5 *Paige*, 626,) Purmort had contracted to purchase certain premises of McCrea for $2,000, and afterwards mortgaged them to the state. It was held that the equitable interest of Purmort was thus conveyed to the state; and that the purchaser under the foreclosure acquired a valid equitable title, subject to McCrea's lien for the purchase money. Whaley, then, was concluded by his grant, and had parted with all his title to that part of the lot to Miss C., and was the mere trustee for her so far as the formal paper title might remain in him. It is therefore within the principle laid down by the chancellor in *Parks* v. *Jackson*, (11 *Wend.* 447;) that if the whole purchase money has been paid on a contract before the recovery of a judgment against the vendor, the vendee will be a trustee for the purchaser; and the purchaser at the sheriff's sale would hold it upon the same trusts. Whaley having conveyed by warranty deed, was so far concluded by that conveyance, that any title afterwards acquired by him would enure immediately to the benefit of Miss C. and her assigns, without any new or other conveyance. This principle is familiar, and is held in *Sweet* v. *Green*, (1 *Paige's R.* 473.) This trust in Whaley was a prior passive trust, and Miss Clark was entitled to the actual possession of the premises; and was so entitled on the 1st day of January, 1830, the day on which the revised statutes took effect as law; which was before the defendant procured the assignment from Whaley. The revised

Turner *v.* Peck.

statutes then vested the legal title in Miss C., so far as it could vest; and it could and did so vest as against the world, save only the state and its lien for the purchase money. Neither Whaley, who had conveyed with warranty, nor any person claiming under him, can say the title did not vest in Miss C. They are estopped from setting up an outstanding title. By 1 *R. S.* 722, § 47, *2d ed.* it is provided that every person who, by virtue of any grant, assignment or devise, now is, or hereafter shall be, entitled to the actual possession of lands, &c., shall be deemed to have a legal estate therein of the same quality, &c., as his beneficial interest. The chancellor, in commenting on this section, says, that in all cases of passive trusts the revised statutes have vested the legal estate in the person entitled to the actual possession. (*Cushing* v. *Henry*, 4 *Paige's R.* 345.) That this is a passive trust, we suppose there is no doubt; the property being, at most, simply vested in Whaley upon trust for another, and the nature of the trust being left to the construction of law. (*Lewin on Trusts*, 214. *Kent's Com.* 309.) If Whaley had intended to convey the north half of the lot, and had executed a proper instrument for that purpose, still, under the circumstances of this case, the defendant acquired no title to it. It is provided by statute, (1 *R. S. 2d ed.* 731, § 143,) that no greater interest shall be construed to pass by any grant or conveyance hereinafter executed, than the grantor possessed at the delivery of the deed, or could then lawfully convey, except that every grant shall be conclusive against the grantor and his heirs. This assignment was executed after this section became a law; and if it is applicable to the case, then certainly nothing passed to the defendant in respect to the north half of the lot. For Whaley had no estate or interest in the north half of the lot at the time of the execution of the assignment, and could lawfully convey none. Whatever may have been the intention of the parties, the instrument executed by Whaley to the defendant did not, in terms, or by any fair construction, convey the north half of the lot. If such was the intention of the parties, and they could do it, they failed to take the necessary steps to effect that intention.

III. The defendant is estopped from denying the validity or effect of Miss Clark's deed. If we have taken a right view of the case, the defendant must claim under Whaley. If so, then he is concluded by Whaley's deed to Miss C. Every grant shall be conclusive as against subsequent purchasers from such grantor, *except* a subsequent purchaser in good faith and for a valuable consideration, who shall acquire a superior title by a conveyance that shall have been first recorded. (1 *R. S. 2d ed.* 731, § 144.) And this section is applicable, whether the defendant claims directly from Whaley, or indirectly through Woodruff. Then Woodruff must hold as purchaser from Whaley, and was concluded by the deed, and had no title to convey to the defendant.

The only question then to be determined is, whether the defendant comes within the exception to the statute; for if he does not, then it is conclusive. And we insist that he does not come within any part of the section. He is not a purchaser in good faith. In order to constitute him a purchaser in good faith, he must have been not only innocent of any intent to defraud, but he must not have had any notice, actual or constructive, of the rights of Miss Clark, and must also have been entirely ignorant of every circumstance which should have put him upon inquiry. And Miss Clark was in possession of the premises at the time of and before the defendant's purchase. If the vendee is in possession of lands, under a contract to purchase, a subsequent purchaser has constructive notice of his rights. (*Gouverneur* v. *Lynch,* 2 *Paige,* 300.) A purchaser of real estate cannot claim the same as a bona fide purchaser, as against the equitable rights of a third person who at the time of such purchase was in the actual possession of the premises, claiming to be the owner. (*Spafford* v. *Manning,* 6 *Paige,* 383. *Grimstone* v. *Carter,* 3 *Id.* 421.) The deed to Miss Clark was constructive notice to the defendant, and deprived him of the character of a bona fide purchaser. (*Per Curiam, Jackson* v. *Post,* 15 *Wend.* 594.) In addition to this, notice may be inferred from the other circumstances of the case, the general notoriety of the holding and occupancy of Miss Clark, and the defendant's living in the same village. And the fact that the lot was assessed to her is evidence

of the notoriety; and the relation existing between the defendant and Whaley adds force to the presumption that the defendant had notice of Miss Clark's rights. Actual notice need not be shown. Courts will protect the rights of third persons, when there are circumstances which should put a purchaser upon inquiry. (*Tuttle* v. *Jackson*, 6 *Wend.* 613. *Pendleton* v. *Fay*, 2 *Paige*, 202.) And in some cases the courts will infer notice. (*Anderson* v. *Van Alen*, 12 *John.* 343.) He was not a purchaser for a valuable consideration. The only consideration of which the court has any certain evidence, or any thing upon which they can rely, is the $30 mentioned in the assignment; and that was for a precedent debt, which does not constitute a valuable consideration. (*Dickinson* v. *Tillinghast*, 4 *Paige*, 215. *Grimstone* v. *Carter*, 3 *Id.* 421.) His conveyance was not first recorded. On the contrary, Miss Clark's deed was recorded before the defendant's pretended purchase.

IV. The conveyance to the defendant from Whaley, if by that it was intended to convey the north half of the lot, or any interest in it, was void by reason of the adverse possession of Miss Clark. That Miss Clark, or she and her husband J. D. Shuart, were in the actual possession of the premises on the 8th June, 1830, is amply proved; and that she claimed adversely to the defendant there is no doubt. By 1 *R. S.* 739, § 147, it is enacted that every grant of land shall be absolutely void, if at the time of the delivery thereof such land shall be in the actual possession of a person claiming under an adverse title. And whether the defendant had notice of the adverse possession, or not, does not alter the case. (*Jackson* v. *Durmut*, 9 *John.* 55.)

V. Whatever formal title to the north half of the lot vested in the defendant by the assignment from Whaley, and the subsequent deed from Woodruff, vested in him as the trustee of Miss Clark and her assigns. It is clear that if the legal title had vested in Whaley he would have been the trustee of Miss C., and we insist that the defendant occupies the same position, and took and holds the title to the north half upon the same trusts, and subject to all the equitable rights of Miss C. and her assigns. It would be a waste of time to repeat the several circumstances

which have been already mentioned in showing that the defendant is not a purchaser in good faith and for a valuable consideration. The same circumstances make him a trustee for Miss C. and her assigns, and it is only necessary for us to refer to a few authorities upon the several points. She had purchased the lot and paid the full consideration, and therefore comes within the principle of *Parks* v. *Jackson*, (11 *Wend.* 447.) Miss C. was in possession ; wherefore the defendant took the conveyance subject to all her equities. (*Gouverneur* v. *Lynch*, 2 *Paige*, 300. *Spafford* v. *Manning*, 6 *Id.* 383. *Grimstone* v. *Carter*, 3 *Id.* 421. *Jackson* v. *Peck*, 15 *Wend.* 300.) Her deed had been recorded ; which was notice to the world, and rendered any subsequent purchaser, who should by chance or fraud acquire the legal title, her trustee. (*Jackson* v. *Post*, 15 *Wend.* 494.) The defendant certainly had actual constructive notice of Miss Clark's rights, and of the trust upon which Whaley held the lot. If a purchaser have notice of a trust, at the time of his purchase, he becomes a trustee, notwithstanding the consideration was paid. (*Murray* v. *Ballou*, 1 *John. Ch. R.* 566. *Shepherd* v. *McEwans*, 4 *Id.* 136.) And any thing which is sufficient to put the defendant on inquiry is equivalent to actual notice. (*Pitney* v. *Leonard*, 1 *Paige*, 461. *Tuttle* v. *Jackson*, 6 *Wend.* 613. *Pendleton* v. *Fay*, 2 *Paige*, 202.) Actual notice need not be shown ; and in some cases the court will infer notice. (*Anderson* v. *Van Alen*, 12 *John.* 343.) There is enough in the case to constitute the defendant the trustee of Miss Clark, aside from the peculiar wording of the assignment and the considerations which have been already alluded to, in another view of the case. Again; Whaley, by his acts, had estopped himself from denying Miss Clark's rights. Woodruff, while he was the owner of the state certificate, admitted her rights, and his knowledge of them ; and the defendant is concluded from denying the trusts as well by the acts and declarations of Whaley as of Woodruff, within the principle of *Gresl. Eq. Ev.* 355; *Varick* v. *Briggs*, (6 *Paige*, 323 ; 22 *Wend.* 543, *S. C. ;) Park* v. *Peck*, (1 *Paige*, 477 ;) *Cowen & Hill's Notes*, 481.

VI. Under any view which can be taken of the case, it ap-

Turner *v.* Peck.

pears to us that the maxim "*Qui prior est tempore potior est jure*" will apply, and decide the case in favor of the complainant. The most that the defendant can claim is that his equities are as strong as those of Miss Clark or of the complainant claiming under her; that he has parted with his money without actual knowledge of Miss C.'s claim, and supposed he was getting a title to the premises. To this we answer, Miss Clark first parted with her money, took a conveyance which she supposed would secure her rights, had that conveyance recorded according to law, as notice to the world, and went into the possession of the lot. And when equities are equal, those which are prior in point of time will prevail. (*Grimstone* v. *Carter*, 3 *Paige*, 421.)

VII. The defendant having no legal or equitable claim to the premises, he by refusing to convey to the complainant rendered himself liable to the costs of the suit; and the decree rightfully charged him with the costs. Costs will be decreed against a trustee unreasonably refusing a conveyance. (*Livingston* v. *Byrne*, 11 *John.* 555.)

THE CHANCELLOR. The first question for consideration in this cause is what equitable interest C. Woodruff had in the lot, No. 213, and what were his legal rights in the same, after he obtained the patent from the state, and until his conveyance to the defendant, without consideration, on the 5th of September, 1834. Previous to the contract with Davis, for the southwest quarter of the lot, and the conveyance to Miss Clark of the north half thereof, Whaley was the equitable owner of the whole lot, subject to the payment of the $30, due to the state, for the unpaid purchase money. By the conveyance of the north half of the lot to Miss Clark with warranty, in 1829, the unpaid purchase money due to the state became primarily chargeable upon the south half of the lot; and the contract with Davis entitled him to the southwest quarter, subject to the payment of the purchase money due upon that contract. And as between Davis and Whaley, as well as between the latter and Miss Clark, the $30, then due to the state, was chargeable on such purchase

money. The covenant from the Woodruffs to Whaley is in writing and explains itself. Parol evidence, therefore, cannot be permitted to alter its construction or legal effect. And upon the true and obvious construction of that covenant, or agreement, it is perfectly immaterial whether the Woodruffs were or were not apprized of the conveyance of Whaley, to Miss Clark, at the time of the assignment of the state certificate to them. For they took no beneficial interest whatever in the north half of the lot, nor in the southeast quarter thereof, under that assignment. The equitable rights of the respondent, both as to them, and as to the appellant as the grantee of C. Woodruff, without consideration, would therefore have been the same, even if the deed to Miss Clark had been dated the day after the execution of the covenant to Whaley; the time when it was actually recorded, in the clerk's office, as a conveyance of an interest in real estate.

The assignment of the state certificate, and of Davis' contract to purchase and pay for the south west quarter of the lot, and the covenant of the Woodruffs to quit-claim the other three quarters of the lot to Whaley, were executed at the same time; and were therefore parts of one and the same contract between those parties. The legal effect of that contract was that, upon the obtaining of the patent from the state, the Woodruffs were bound to convey three fourths of the lot to Whaley by a quit-claim deed, absolutely and unconditionally. And as to the southwest quarter they were to convey it to Davis upon his complying with the terms of his contract; and were to receive and retain the purchase money due upon that contract, to reimburse them for the $30 which they were to pay to the state. But if he did not comply with his contract, they would be entitled to that quarter of the lot, for their own use and benefit, as an equivalent for the moneys paid by them to the state, to obtain the patent. Had the Woodruffs, therefore, obtained the patent previous to the assignment of Whaley's interest in their covenant, and afterwards quitclaimed the residue of the lot to Whaley, according to the terms of that covenant, the previous conveyance of the north half of the lot to Miss Clark with warranty, would have vested the legal title to that half of the lot in her, by estoppel; without

the necessity of the interposition of this court.  The only right, title, or claim therefore, which Whaley had in the lot, under the covenant of the Woodruffs, at the time of the date of the assignment of all his right and title to the respondent, was the right to an absolute conveyance, for his own benefit, of the southeast quarter of the lot, as soon as a patent for the whole lot should be obtained from the state.  This then was all that was sold or professed to be sold, to the appellant, by the terms of the assignment to him, in June, 1830, which was endorsed upon the covenant.  The appellant therefore took the assignment of Whaley's right to a quitclaim deed under that covenant, subject to the previous right of Miss Clark to the north half of the lot, under the warranty deed from Whaley to her.

Considering the interest of Whaley as a mere equity, at the time of the execution of the deed to Miss Clark, in April, 1829, and at the time of the assignment to the appellant, in June, 1830, the prior equity must prevail.  For as between equal equities, he who is first in time is strongest in right.  And if the recording acts apply to this case, the recording of the deed to Miss Clark, in August, 1829, was constructive notice to the subsequent purchaser of the interest of Whaley, in the same lot under the covenant of the Woodruffs, that she was entitled, by virtue of the covenant of warranty, to any interest which the grantor had in the north half of the lot, either at law or in equity, at the date of the deed to her, or which he might thereafter have acquired under that covenant of the Woodruffs.  For if the appellant had examined the records, for the purpose of ascertaining whether Whaley was the equitable owner of the three fourths of the lot which the Woodruffs covenanted to convey to him, by their agreement of the 14th of August, 1829, he would have found the warranty deed of Whaley, which was recorded the next day after that agreement.  And that deed showed that Whaley had not acquired, and could not acquire any beneficial interest in the north half of the lot from any person, other than Miss Clark, which would not immediately enure to her benefit by virtue of his covenant of warranty.  At the time of the execution of the deed of the fifth of September, 1834, therefore, C.

Woodruff held the legal title to the north half of the lot in trust for the use and benefit of the wife of Shuart; as the actual and absolute owner thereof under the deed from Whaley to her, and under the subsequent covenant to give a quitclaim deed of the three fourths of the lot to Whaley. He also held the legal title of the southwest quarter of the lot for his own use and benefit, subject to the contract of Davis. And the remaining quarter of the lot he held in trust for the appellant.

It appears, by the testimony of Shuart, that after the assignment of the state certificate, and before C. Woodruff obtained the patent from the state, he was distinctly notified by the ·witness that Mrs. Shuart had a deed from Whaley for the north half of the lot, which was prior in point of time, to the assignment of the state certificate by the latter. The subsequent conveyance of that half of the lot to the appellant was therefore inequitable and unconscientious, on the part of Woodruff, and in fraud of her rights. And that conveyance being entirely without consideration, the appellant is not entitled to hold the land as against the complainant, who has derived title to the same under the conveyance from her and her husband; whether the appellant was or was not apprized of the existence of the deed from her. Nor can the appellant be permitted to set up the insufficiency of the consideration for which she and her husband sold and conveyed their interests in the premises, and when no complaint is made by them on that subject.

In this view of the case, it is unnecessary to inquire whether the appellant had actual notice of the deed to Miss Clark for the north half of the lot; or whether she was in possession at the time of the assignment of Whaley's interest in the covenant of the Woodruffs, in June, 1830, so as to amount to constructive notice of her interest in the premises, independent of the recording of her deed. The complainant therefore was entitled to a decree for the conveyance of the north half of the lot to him. And as the appellant had refused to execute a conveyance of the title, which he had acquired under the deed of September, 1834, after he had notice of the rights of Mrs. Shuart, and of her

grantee, under the deed of April, 1829, I think he was properly charged with the costs of this suit, which that refusal had rendered necessary.

The decree appealed from must be affirmed with costs.